UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

EDITH OSBURN,                          )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )        No.  4:14CV844 ACL
                                       )
CAROLYN W. COLVIN, Acting              )
Commissioner of Social Security,       )
                                       )
                    Defendant.         )

## MEMORANDUM AND ORDER

Plaintiff Edith Osburn brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) seeking judicial review of the Commissioner's final decision denying

her applications for disability insurance benefits (DIB) under Title II of the Social

Security Act, 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income

(SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.*  All matters are

pending before the undersigned United States Magistrate Judge, with consent of

the parties, pursuant to 28 U.S.C. § 636(c).  Because the Commissioner's final

decision is supported by substantial evidence on the record as a whole, it is

affirmed.

### I.  Procedural History

On December 24, 2012, the Social Security Administration denied plaintiff's

applications for DIB and SSI, in which plaintiff claimed she became disabled on

December 24, 2011, because of chronic obstructive pulmonary disease, anxiety, depression, asthma, osteoarthritis, and acid reflux. At plaintiff's request, a hearing was held before an administrative law judge (ALJ) on August 16, 2013, at which plaintiff and a vocational expert testified. On November 5, 2013, the ALJ denied plaintiff's claims for benefits, finding vocational expert testimony to support a finding that plaintiff could perform work as it exists in significant numbers in the national economy. (Tr. 5-19.) On February 25, 2014, the Appeals Council denied plaintiff's request for review of the ALJ's decision. (Tr. 1-3.) The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, plaintiff claims that the ALJ's decision is not supported by substantial evidence on the record as a whole because the ALJ failed to consider plaintiff's depression at Step 2 of the sequential analysis and failed to consider the effects of this impairment in determining her residual functional capacity (RFC). For the reasons that follow, the ALJ did not err in his decision.[1]

## II. Relevant Testimonial Evidence Before the ALJ

At the hearing on August 16, 2013, plaintiff testified in response to

---

[1] The undersigned has reviewed the entirety of the administrative record in determining whether the Commissioner's adverse decision is supported by substantial evidence. However, inasmuch as plaintiff challenges the decision only as it relates to her mental impairments and not as it relates to any physical impairment, the recitation of specific evidence in this Memorandum is limited to only that relating to the issues raised by plaintiff on this appeal.

questions posed by the ALJ and counsel.

At the time of the hearing, plaintiff was forty-seven years of age. She has a tenth grade education with no additional training. (Tr. 42-43.) Plaintiff lives with and cares for her mother. A niece also lives with her. (Tr. 43-44, 51.)

Plaintiff's Work History Report shows that plaintiff worked as a hotel housekeeper from June 2006 to June 2007. She worked as a factory line worker in November and December 2007. From March 2008 to December 2012, plaintiff worked as a packer in a glue factory. Plaintiff also worked as a caregiver in home health care from May to December 2012. (Tr. 229.)

Plaintiff testified that she has suffered from depression and anxiety since childhood but received no treatment as a child. Plaintiff currently sees a counselor every week. She isolated herself before seeking counseling. Plaintiff testified that her depression causes her to feel that she has no purpose, and she no longer wants "to be here." (Tr. 57, 67-68.) She has crying spells twice a day that are not triggered by anything in particular. Plaintiff testified that she takes Celexa and other medications, which help her condition. She experiences no side effects from her medications. (Tr. 57-59.) Family Nurse Practitioner Twyman is plaintiff's primary healthcare provider. (Tr. 45.)

Plaintiff testified that she has bad mood swings and sometimes becomes very mean. Plaintiff testified that she has lashed out at family members and no

longer associates with friends. She does not want to be around a lot of people most of the time and does not like going to the grocery store or driving on the interstate. Plaintiff testified that she can tell when she wakes up in the morning whether it will be a good day or a bad day. (Tr. 59-60.) She had no difficulty getting along with people at her most recent job. (Tr. 68-69.)

In response to observations at the hearing that she was moving about, making fists, and rubbing her legs, plaintiff testified that she engages in such motion all of the time. She also testified that she has panic attacks during which she becomes very nervous and anxious and paces the floor. (Tr. 60-61.) Plaintiff testified that she has difficulty breathing when she is stressed or paranoid. (Tr. 63.)

As to her daily activities, plaintiff testified that she gets up at 6:00 a.m. and gets coffee ready for her mother. Plaintiff then gets her mother up and does some chores, such as vacuuming and dusting. Plaintiff will get something for her mother to eat, clean the kitchen, and then nap. Plaintiff then does the laundry or bathes her mother. Plaintiff fixes dinner and watches television in the evening. (Tr. 71.) Plaintiff has a driver's license but does not drive because of road rage – she is "not good in a lot of traffic." (Tr. 43.) Plaintiff no longer goes to church but was thinking about returning. Plaintiff testified that some women from church come to her house about once a month to visit. (Tr. 70-71.)

A vocational expert was present at the hearing and was asked by the ALJ to

consider an individual of plaintiff's age and with plaintiff's education and work experience who could perform light work and who experienced certain environmental, postural, and manipulative limitations. The ALJ asked the expert to consider this person to be limited to simple work and that she "would need to perform . . . in an environment that does not require interaction with the public, and requires no more than occasional interaction with coworkers and supervisors." (Tr. 76.) The expert testified that such a person could perform plaintiff's past work as a packager as well as additional work such as small products assembler, inspector, and hand packager. The expert testified that the person could perform such work even if she were off task five minutes each hour. (Tr. 76-77.) The expert testified that if the same person were limited to sedentary work instead of light work, she could perform work such as address clerk and patcher. (Tr. 77-78.) The expert testified that the person would be precluded from performing any work if she could only rarely interact with coworkers and supervisors. (Tr. 78-79.)

### III.  Relevant Medical Evidence Before the ALJ

Plaintiff visited Family Nurse Practitioner (FNP) Deanna M. Twyman at the Conway Family Clinic (Conway) on January 11, 2011, and reported that she had had a short fuse for the past six months and gets mad and frustrated easily at work and at home. Plaintiff reported having work stress because of the possibility of the plant closing within the year. FNP Twyman noted plaintiff not to be in distress

and to have a normal mood and affect. Plaintiff was oriented times three, and her judgment, insight, and memory were noted to be intact. Plaintiff was diagnosed with anxiety and was prescribed Celexa. (Tr. 288-89.)

Plaintiff visited FNP Terri Schmidt at Conway on August 19, 2011, with complaints related to gastroenteritis, bronchitis, and nausea. No psychological complaints were noted. (Tr. 286-87.)

On July 5, 2012, plaintiff returned to FNP Twyman and complained of problems with mood changes and being constantly angry. Plaintiff reported having sleep problems due to physical conditions as well as anxiety. Plaintiff reported that Celexa no longer helped. Plaintiff also reported having problems with depression in the past – feeling like being in a "black hole" – and that she was experiencing such problems again. Plaintiff reported not wanting to do anything but sit on the porch. FNP Twyman noted plaintiff's psychiatric demeanor to be normal except she had a somewhat flat affect. Plaintiff was diagnosed with anxiety and depressive disorder and was prescribed Celexa and Amitriptyline. She was instructed to return in one month. (Tr. 284-85.)

On August 24, 2012, plaintiff reported to FNP Twyman that she was staying away from people because she had increasing problems with "blowing up." Plaintiff reported that she was reaching a point where she "just didn't care." FNP Twyman noted plaintiff's psychiatric demeanor to be normal in all respects.

Plaintiff was continued in her diagnoses of anxiety and depressive disorder and was prescribed Xanax. (Tr. 282-83.) Plaintiff returned to FNP Twyman on August 30 for complaints related to bronchitis. No psychological complaints were noted. (Tr. 280-81.)

On September 17, 2012, Christie S. Erven, Ph.D., completed a Mental Medical Source Statement (MSS) wherein she reported plaintiff's diagnoses to be major depressive disorder, recurrent, severe, without psychotic features / rule out bipolar disorder; and generalized anxiety disorder. Dr. Erven's first appointment with plaintiff was that same date, but she reported that she knew of plaintiff through therapy with a family member. Dr. Erven opined that plaintiff had extreme limitations in coping with normal stress; behaving in an emotionally stable manner; relating to family, peers, or caregivers; interacting with strangers or with the general public; performing at a consistent pace without an unreasonable number and length of breaks; and responding to changes in the work setting. Dr. Erven further opined that plaintiff experienced marked limitations in her ability to make simple and rational decisions; maintain attention and concentration for extended periods; accept instructions or respond to criticism; and maintain socially acceptable behavior. In addition, Dr. Erven opined that plaintiff had moderate limitations in her ability to sustain an ordinary routine without special supervision; ask simple questions or request assistance; adhere to basic standards of neatness

and cleanliness; maintain reliability; and function independently. Dr. Erven reported that plaintiff's psychologically-based symptoms would cause her to be late to work or to leave work early at least three times a month. Dr. Erven stated that these assessed limitations began at age eleven and that plaintiff's current episode has lasted two years. (Tr. 266-68.)

On September 25, 2012, plaintiff reported to FNP Twyman that her depression was better that day, but she continued to have ups and downs. Plaintiff reported that her medication was helping with depression and that taking increased dosages of Xanax helped to better control her anxiety. It was noted that plaintiff had begun seeing a counselor. Plaintiff's psychiatric demeanor was normal in all respects. Plaintiff was continued in her diagnoses and was instructed to increase her dosages of Xanax and Amitriptyline. (Tr. 278-79.)

On October 8, 2012, plaintiff visited FNP Twyman for complaints related to swelling and pain in her feet. Plaintiff reported that she slept okay. Plaintiff's sister reported that plaintiff was having problems with short term memory. Plaintiff's psychiatric demeanor was noted to be normal in all respects. Plaintiff was continued in her diagnosis of anxiety and was instructed to continue on her current medications. (Tr. 275-77.) On October 25, plaintiff reported to FNP Twyman that she was doing better with her anxiety on an increased dosage of Xanax and was caring for her nieces. Plaintiff was diagnosed with anxiety and

depressive disorder and was instructed to continue with Xanax. Plaintiff was instructed to return in one month. (Tr. 273-74.)

Plaintiff returned to FNP Twyman on November 29, 2012, and reported being nervous and anxious. Plaintiff reported that she gets depressed during the holidays and had already made arrangements to see her counselor. FNP Twyman noted plaintiff's psychiatric demeanor to be normal in all respects. Plaintiff was diagnosed with depressive disorder, and her Xanax was refilled. (Tr. 270-72.)

Plaintiff visited Dr. Erven on December 17, 2012, and complained of depression and difficulty coping with stressors. Dr. Erven noted plaintiff to have a depressed mood and restricted affect. Plaintiff reported that she did not take her medication for a week because she had run out of it and that she had become irritable and depressed by the end of the week. It was noted that plaintiff had difficulty affording her medication. Plaintiff reported having a sad mood on a daily basis and that she has crying spells several times a week. Plaintiff reported currently feeling helpless, hopeless, and worthless. Dr. Erven noted suicidal ideation to persist but that plaintiff had no intent. Plaintiff reported that her emotions are better regulated with medication and therapy and that her sleep is better with Amitriptyline. Dr. Erven determined plaintiff's depression to be severe but noted that plaintiff could not attend weekly therapy sessions because of financial issues. Plaintiff reported seeking online support from friends and that she

has social support from church. Dr. Erven diagnosed plaintiff with major depressive disorder. Bipolar disorder was to be ruled out. Individual therapy was recommended and plaintiff agreed to schedule a follow up appointment. (Tr. 334.)

On December 21, 2012, Steven Akeson, Psy.D., a psychological consultant with disability determinations, completed a Psychiatric Review Technique Form in which he opined that plaintiff's affective disorder and anxiety disorder caused mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration. (Tr. 301-02.) In a Mental RFC Assessment completed that same date, Dr. Akeson opined that plaintiff was moderately limited in her ability to understand and remember detailed instructions, but had no significant limitations with respect to simple instructions or with remembering locations and work-like procedures. With respect to plaintiff's concentration and persistence, Dr. Akeson opined that plaintiff was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and work in coordination with or in proximity to others without being distracted by them, but was otherwise not significantly limited. With respect to social interaction, Dr. Akeson opined that plaintiff was moderately limited in her ability to interact appropriately with the general public and to accept instructions and respond appropriately to criticism from supervisors,

but was not otherwise significantly limited.  Dr. Akeson concluded that plaintiff retained the capacity to acquire and retain at least simple instructions; to sustain concentration, persistence, or pace with at least simple, repetitive tasks; to relate adequately with others in settings that do not require frequent public contact or unusually close interaction; and to adapt to changes in non-complex work environments.  (Tr. 306-08.)

Plaintiff visited FNP Twyman on December 27, 2012, and reported that Xanax continued to help with anxiety.  FNP Twyman noted plaintiff's current medications to include Xanax, Celexa, and Amitriptyline.  Plaintiff was continued in her diagnosis of anxiety and was instructed to continue with her medications. (Tr. 332-33.)

Plaintiff returned to Dr. Erven on January 14, 2013, and reported that her medication was not working as well as it had.  Plaintiff reported that she almost took herself to the hospital the previous night because she did not know if she "could take it anymore."  Dr. Erven noted plaintiff to have a depressed mood and a restricted affect.  Plaintiff reported feeling irritated and frustrated and that she needed time alone from the kids who lived in her home.  Plaintiff reported not sleeping well and feeling more on edge during the day.  Plaintiff also reported feeling sad and having crying spells on a daily basis.  Suicidal ideation was noted, but plaintiff reported that she would not act on her thoughts because of her niece

and others who are dependent on her. Plaintiff was noted to attend church weekly. Inpatient hospitalization was discussed. Plaintiff was continued in her diagnosis of major depression and agreed to schedule a follow up appointment. (Tr. 331.)

Plaintiff visited FNP Twyman on January 29, 2013, and reported an increase in anxiety but that Xanax continued to help. Plaintiff's psychological demeanor was noted to be normal in all respects. Plaintiff was instructed to increase her dosage of Amitriptyline and to continue with her other medications as prescribed. (Tr. 341-42.)

On March 1, 2013, plaintiff reported to FNP Twyman that she continued to have problems with anxiety and with sleeping. Plaintiff was instructed to discontinue Amitriptyline, and Trazodone was prescribed. (Tr. 343-44.)

Dr. Erven completed another Mental MSS on March 4, 2013, and reported plaintiff's diagnoses to be generalized anxiety disorder and major depressive disorder, recurrent, severe. Dr. Erven opined that plaintiff experienced extreme limitations in her ability to cope with normal stress and in her ability to interact with strangers or the general public; and marked limitations in her ability to relate to family, peers, or caregivers and in her ability to respond to changes in work settings, sustain an ordinary routine without special supervision, perform at a consistent pace without an unreasonable number and length of breaks, maintain attention and concentration for extended periods, and behave in an emotionally

stable manner. Dr. Erven further opined that plaintiff was moderately limited in her ability to function independently, accept instructions or respond to criticism, maintain socially acceptable behavior, and make simple and rational decisions. Dr. Erven opined that plaintiff had no limitations in her ability to ask simple questions, request assistance, maintain reliability, and adhere to basic standards of neatness and cleanliness. Dr. Erven opined that plaintiff could apply commonsense understanding to carry out simple one- or two-step instructions and could interact appropriately with coworkers, supervisors, and the general public for no more than two hours a day. Dr. Erven reported that plaintiff's psychologically-based symptoms would cause her to miss work at least three times a month and be late or leave early from work at least three days a month. Dr. Erven reported the onset of these assessed limitations to have occurred on September 17, 2012, the first day she provided service to plaintiff. Dr. Erven noted that plaintiff's first episode of major depression occurred at age eleven and that she has had multiple episodes throughout her adolescence and adulthood. (Tr. 337-40.)

Plaintiff returned to FNP Twyman on March 5, 2013, and requested that she be restarted on Amitriptyline because she had trouble sleeping with the new medication. Plaintiff was instructed to discontinue Trazodone, and Amitriptyline was prescribed. During follow up on April 3, no psychological complaints were noted. On April 17, plaintiff visited FNP Twyman with complaints of abdominal

pain.  No psychological complaints were noted.  During an office exam for a rash and mammogram screening on May 7, FNP Twyman noted plaintiff to have no additional concerns or complaints.  (Tr. 345-52.)

Plaintiff visited FNP Twyman on June 4, 2013, with complaints relating to bronchitis.  No psychological complaints were noted.  Plaintiff's Celexa was refilled at that time.  During follow up examination on June 10, no psychological complaints were noted; nor were any complaints noted during a visit on July 1.  (Tr. 353-58.)

On July 9, 2013, plaintiff visited FNP Stephanie Voorhis at Conway to obtain a refill of Xanax.  Plaintiff reported recent difficulties falling and staying asleep.  Her psychiatric demeanor was normal in all respects.  Plaintiff's Xanax was refilled, and she was prescribed Silenor to take at bedtime.  (Tr. 359-60.)

## IV.  The ALJ's Decision

The ALJ found plaintiff to meet the insured status requirements of the Social Security Act through December 31, 2012, and not to have engaged in substantial gainful activity since December 24, 2011, the alleged onset date of disability.  The ALJ found plaintiff's obesity, "tobaccoism," osteoarthritis, carpal tunnel syndrome, asthma, COPD, and anxiety to be severe impairments, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

(Tr. 10-11.)  The ALJ determined plaintiff to have the RFC to perform sedentary work

> except she can stand and/or walk a cumulative total of 2 hours, and sit a cumulative total of 6-8 hours in an 8-hour workday; she needs the opportunity, if performing seated work, to stand every 60 minutes, without leaving the work station or being off task, to relieve discomfort, for a period of time not to exceed 5 minutes; she can occasionally climb ramps and stairs, but never ladders and scaffolds; she can never balance as a part of work activity; she can occasionally stoop, kneel, and crouch, but never crawl; she should not be required to use her right upper extremity to perform power gripping or constant gripping, but she can frequently, [sic] reach, handle, and feel; she must avoid concentrated exposure to extreme cold and heat, humidity, respiratory irritants, and vibration; she can never work at unprotected heights or around dangerous moving machinery such as forklifts; she can perform simple work; she can have no interaction with the public, and only occasional interaction with coworkers and supervisors.

(Tr. 13.)[2]  The ALJ found plaintiff unable to perform any of her past relevant work.

Upon consideration of plaintiff's age, education, work experience, and RFC, the

ALJ found vocational expert testimony to support a finding that plaintiff could

perform other work as it exists in significant numbers in the national economy, and

specifically, as an address clerk and patcher.  The ALJ thus found plaintiff not to be

under a disability at any time from December 24, 2011, through the date of the

decision.  (Tr. 19.)

## V.  Discussion

To be eligible for DIB and SSI under the Social Security Act, plaintiff must

---

[2] A hypothetical question with these RFC limitations was posed to the vocational expert at the administrative hearing on August 16, 2013.  (Tr. 75-77.)

prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. At Step 3 of the

analysis, the Commissioner determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by

substantial evidence on the record as a whole, the Court must review the entire

administrative record and consider:

1.    The credibility findings made by the ALJ.

2.    The plaintiff's vocational factors.

3.    The medical evidence from treating and consulting physicians.

4.    The plaintiff's subjective complaints relating to exertional and
      non-exertional activities and impairments.

5.    Any corroboration by third parties of the plaintiff's
      impairments.

6.    The testimony of vocational experts when required which is
      based upon a proper hypothetical question which sets forth the
      claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir.

1992) (internal citations omitted).  The Court must also consider any evidence

which fairly detracts from the Commissioner's decision.  *Coleman*, 498 F.3d at

770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).  "If, after reviewing

the entire record, it is possible to draw two inconsistent positions, and the

Commissioner has adopted one of those positions," the Commissioner's decision

must be affirmed.  *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012).  The

decision may not be reversed merely because substantial evidence could also

support a contrary outcome.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

Plaintiff claims that the ALJ erred at Step 2 of the sequential analysis by

failing to find her depression to be a severe impairment, and further erred by failing to include limitations caused by this impairment in the RFC assessment. To the extent the ALJ erred by failing to identify depression as a severe impairment, such error was harmless. Plaintiff's remaining claim is without merit.

Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the process. *See Coleman v. Astrue*, No. 4:11CV2131 CDP, 2013 WL 665084, at *10 (E.D. Mo. Feb. 23, 2013). At Step 2 of the sequential analysis here, the ALJ found plaintiff to have a number of severe impairments, including anxiety. The ALJ did not include depression among the impairments he found to be severe. Continuing in the evaluation process, however, the ALJ noted that plaintiff was being treated for anxiety and depression, considered the effects of plaintiff's mental impairments *in toto*, and included such effects in the RFC assessment.

Subsequent to Step 2, the ALJ proceeded to Step 3 of the sequential analysis and found plaintiff's mental impairments not to meet or equal the criteria of Listings 12.04 (affective disorders) or 12.06 (anxiety-related disorders). Depressive disorder is among the impairments to be considered under Listing 12.04. In determining plaintiff's RFC at Step 4 of the analysis, the ALJ noted that

plaintiff was being treated for depression and recognized her therapist's observation of depressed mood. The ALJ addressed both Dr. Erven's and FNP Twyman's objective observations of plaintiff's psychiatric demeanor and the treatment rendered by both providers for plaintiff's mental impairments. In both Steps 3 and 4 of his analysis, the ALJ did not segregate plaintiff's mental impairments or their symptoms but instead considered the totality of their effect, including in the domains of mental functioning. While the ALJ noted the record to show that Xanax helped plaintiff's anxiety symptoms, he nevertheless considered all of plaintiff's mental symptoms in determining her RFC. (Tr. 15-16.) Indeed, as noted by the ALJ, his RFC assessment "account[ed] for the claimant's mental impairments . . . by limiting her to simple work, restricting her from work requiring public contact and limiting contact with coworkers and supervisors to an occasional basis." (Tr. 16.)

Given that the ALJ included the effects of plaintiff's mental impairments *in toto* in his overall analysis, his failure to find depression to be a severe impairment at Step 2 was harmless. *See Maziarz v. Secretary of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987); *Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010); *see also Chavez v. Astrue*, 699 F. Supp. 2d 1125, 1133 (C.D. Cal. 2009). This is especially true here where the ALJ included such effects in the RFC assessment. *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (Commissioner

required to consider any non-severe impairments when determining RFC); *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008) (ALJ must consider combined effects of severe and non-severe impairments). Accordingly, remand is not appropriate for this claimed error. *See Byes v. Astrue*, 687 F.3d 913, 917-18 (8th Cir. 2012) (case would not have been decided differently in the absence of ALJ's claimed error); *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (declining to remand for alleged error in opinion when error "had no bearing on the outcome") (internal quotation marks omitted).

Plaintiff appears to argue that the ALJ did not consider evidence from plaintiff's providers regarding the effects of her depression. A review of the ALJ's decision, however, shows him to have summarized the treatment records and opinion evidence from Dr. Erven and FNP Twyman,[3] including FNP Twyman's repeated observations that plaintiff's memory, judgment, and insight were intact and that plaintiff was fully oriented and had normal mood and affect. The ALJ also noted Dr. Erven's treatment records not to document any objective signs of persistent psychiatric abnormalities. As such, although the ALJ did not

---

[3] Of note regarding FNP Twyman's notes regarding Plaintiff's visits to the Conway Family Clinic between January 29, 2013 and July 9, 2013, is that there is not a single reference to Plaintiff complaining about or suffering from depression. (Tr. 341-360.) Of the ten visits during this time-frame: anxiety is mentioned three times, a request for a Xanax refill one time, and other physical health issues without mention of any mental health issue six times. *Id.* Between January 11, 2011 and November 29, 2012, Plaintiff saw FNP Twyman at Conway Family Clinic a total of nine times; of those nine visits, Plaintiff claimed she was bothered by depression along with other issues (*i.e.*, anxiety, COPD, sleep problems, and anger issues) during four visits. (Tr. 270-289.)

specifically cite to all treatment records, a review of his summary of plaintiff's mental health treatment shows that he considered them. *See Montgomery v. Chater,* 69 F.3d 273, 275 (8th Cir. 1995) (ALJ's failure to cite specific evidence does not indicate that such evidence was not considered).

Finally, to the extent plaintiff contends that the ALJ improperly ignored opinion evidence rendered by Dr. Erven, a review of the ALJ's decision belies this contention. The ALJ specifically addressed Dr. Erven's opinion evidence and determined to accord it little weight given her limited treatment relationship with plaintiff and because other substantial evidence of record showed plaintiff not to experience the extreme and/or marked limitations as opined by Dr. Erven. (Tr. 17.) Because these reasons are supported by the record and constitute good reasons to discount opinions from a treating provider, the ALJ did not err in according Dr. Erven's opinion evidence little weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (ALJ must give good reasons for weight given to treating source opinions). *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) (length of treatment relationship and frequency of examination to be considered in determining what weight to accord opinion evidence); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (more weight given to opinion that is consistent with record as a whole); *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005) (inconsistency with other substantial evidence is itself a good reason to discount a

treating physician's opinion).

Accordingly, for the reasons set out above on the claims raised by plaintiff on this appeal,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and this case is **DISMISSED**.

A separate Judgment in accordance with this Memorandum and Order is entered herewith.

s/Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of September, 2015.